# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BEN HAWKINS,
      Petitioner,

      vs.

WARDEN, CORRECTIONS
MEDICAL CENTER,
      Respondent.

Case No. 1:10-cv-551

Barrett, J.
Bowman, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition, respondent's return of writ (Doc. 5), petitioner's response (Doc. 11), and petitioner's second motion for an emergency stay of execution of sentence. (Doc. 22).

For the reasons stated herein, the undersigned recommends that petitioner's habeas petition be denied with prejudice. It is also recommended that petitioner's second motion for an emergency stay of execution of sentence be denied.

## I.      BACKGROUND

Petitioner is an inmate in state custody, challenging his conviction and sentence resulting from pleading guilty to several counts of importuning and gross sexual imposition. The summary of facts supporting his conviction, as introduced following petitioner's guilty plea and during sentencing, indicated that on multiple occasions petitioner posted advertisements or engaged in online chat conversations regarding a false marketing study focusing on children's underwear. (Doc. 9, Transcript p. 16). Petitioner set up a fax-to-email line where parents filled out surveys detailing whether their child had body hair, shaved, used deodorant, and what type of underwear they wore. *Id.* at 70-71. Parents submitted this survey to what they believed was a

west coast based company, but in reality the responses were delivered to petitioner's home computer. *Id.* Petitioner used several different email addresses in order to appear to be a legitimate market researcher, including posing as a female supervisor when parents expressed reservations about the study. *Id.* at 71-72. Petitioner arranged to meet with families interested in the study, where he would ask the children to change into underwear and take measurements of the children. *Id.* at 17.

In March of 2008, after presenting the marketing study to the mother of three girls, aged 9, 14, and 16, petitioner arranged a meeting at the family's home. During the meeting petitioner "proceeded to take the three children into the kitchen area of the home where they changed into underwear and measured the children resulting into (sic) sexual contact." *Id.* at 16-17.

Also in March of 2008, petitioner contacted the mother of a boy and girl, aged 12 and 13, regarding the same marketing study. *Id.* at 18. The family met petitioner at Roger Bacon High School, where petitioner brought the children into a locker room and asked them to undress and put on the underwear. *Id.* at 18-19. In this instance, the children "got a little skirmish" and "took off out of the locker room back to the mother." *Id.* at 20. Petitioner also quickly fled after gathering his belongings. *Id.* The mother reported the incident to the St. Bernard Police Department, who subsequently interviewed petitioner regarding his behavior with the children and "the things he was thinking about in doing this."[1] *Id.* at 21. The police also confiscated his computers and found evidence of email correspondence with the families. *Id.*

---

[1] An officer who investigated the incident informed the trial court that "one of the things I found troubling from the whole aspect of this was the fact it wasn't, there was no photographs taken, there was some contact, but the thing that really troubled me the most is that he said he would retain the images in his head in the meeting and he would go home and then he would masturbate." *Id.* at 25.

During the course of the investigation, petitioner rebuilt another computer and contacted at least two other families after his initial contact with the police. *Id.* at 22, 27. In between June 1, 2008 and July 14, 2008, petitioner began conversations with another family regarding the marketing study. *Id.* at 21. Petitioner arranged to meet with this family at Mercy Hospital. *Id.* at 22-23. Prior to the meeting, the mother became suspicious and contacted the Springdale Police Department, who eventually monitored the meeting with petitioner. *Id.* at 22. Petitioner brought the children and mother to an empty room, where "he moved a chair in front of the door inside the room kind of in a way barricading it but not totally." *Id.* at 23. Once inside the hospital room, the police intervened.[2]

## II.    PROCEDURAL HISTORY

### State Trial and Appellate Proceedings

On August 8, 2008, the Hamilton County, Ohio grand jury returned a nineteen count indictment charging petitioner with nine counts of importuning, in violation of Ohio Rev. Code § 2907.07(C)(1) & (D)(1); seven counts of kidnapping, in violation of Ohio Rev. Code § 2905.01(A)(2) & (A)(4), with specifications; one count of gross sexual imposition, in violation of Ohio Rev. Code § 2907.05(A)(4); and two counts of attempt (gross sexual imposition), in violation of Ohio Rev. Code § 2923.02(A). (Doc. 9, Ex. 1). On December 10, 2008, petitioner entered a guilty plea to nine counts of importuning and three counts of gross sexual imposition, which was accepted by the trial court on December 18, 2008. (Doc. 9, Ex. 2 & 3). On January 29, 2009, petitioner received a total aggregate sentence of forty-four years. (Doc. 9, Ex. 5).

On July 13, 2009, through the assistance of new counsel, petitioner filed a timely appeal

---

[2] The statement of facts also included reference to additional conversations aimed at setting up meetings with two other families. *See id.* at 24.

to the Ohio Court of Appeals, First Appellate District.  (Doc. 5, Ex. 10).  Petitioner raised the

following assignment of error challenging his conviction and sentence:

> 1.  The trial court erred by sentencing Appellant to maximum consecutive
>     terms of incarceration.

(Doc. 9, Ex. 9).  On December 16, 2009, the Ohio Court of Appeals overruled petitioner's

assignment of error and affirmed the judgment of the trial court.  (Doc. 9, Ex. 11).

### Motion for Delayed Appeal

On February 5, 2010, petitioner filed a pro se notice of appeal and a motion for leave to

file a delayed appeal to the Ohio Supreme Court.  (Doc. 9, Ex. 12 & 13).  On March 24, 2010,

the Ohio Supreme Court granted his motion for delayed appeal and ordered petitioner to file a

memorandum in support of jurisdiction.  (Doc. 9, Ex. 14).  Petitioner subsequently filed a

memorandum raising the following propositions of law:

> Proposition of Law No. 1:  The high cost of appellant's medical care, which the
> state is required to provide as long as he is incarcerated is an unnecessary burden
> to taxpayers.
>
> Proposition of Law No. 2:  Incarceration of Appellant in an Ohio DRC facility
> amounts to Cruel and Unusual Punishment, contrary to both the U.S. and Ohio
> Constitutions.
>
> Proposition of Law No. 3:  The sentence imposed, maximum, consecutive terms
> of incarceration was contrary to sentencing law, and an abuse of discretion.  In
> addition, appellant had ineffective counsel at both the Common Pleas and Appeals
> Court levels, leading to several errors.

(Doc. 9, Ex. 15).  On July 21, 2010, the Ohio Supreme Court denied leave to appeal and

dismissed "the appeal as not involving any substantial constitutional question."  (Doc. 9, Ex. 17).

**Application to Reopen Appeal**

While petitioner's direct appeal was pending, he filed an application to reopen his appeal,

arguing that his appellate counsel was ineffective for failing to raise the following errors:

> 1. Due to Appellant's serious medical condition, incarceration in the Ohio Department of Rehabilitation and Corrections (ODRC) amounts to Cruel and Unusual Punishment, contrary to the Eight Amendment to the U.S. Constitution.
>
> 2. The trial judge may have been biased. He ordered a pre-sentence investigation, which included evaluation by a psychologist at the Hamilton County Court Clinic. No surprises were uncovered during the pre-sentence investigation, and the Court Clinic recommended home incarceration. Yet, the judge imposed a sentence of maximum, consecutive terms under confinement of ODRC. Appellant has no history of violence, yet the judge made mention of expecting appellant to kill someone next. There was nothing in the records or evaluations to suggest murder, which indicates that the judge to suggest murder, which indicates that the judge had a prejudice. The case should be sent back to trial court for explanation of this statement and possible resentencing.

(Doc. 9, Ex. 18). The Ohio Court of Appeals overruled his application to reopen on April 8,

2010. (Doc. 9, Ex. 20). Petitioner did not appeal the ruling to the Ohio Supreme Court.

**Federal Habeas Corpus**

Petitioner filed the instant petition on August 16, 2010. (Doc. 1). In the petition,

petitioner raises the following grounds for relief:

> <u>GROUND ONE</u>: The sentence imposed amounts to Cruel and Unusual Punishment.
>
> <u>GROUND TWO</u>: The sentence imposed, maximum, consecutive terms of incarceration was contrary to Ohio sentencing law, and an abuse of discretion.
>
> <u>GROUND THREE</u>: Petitioner had ineffective counsel at both the Common Pleas and Appeals Court levels, leading to several errors.

*Id.*

On February 24, 2011, petitioner filed a "motion for emergency stay of execution of petitioner's sentence pending the outcome of action seeking writ of habeas corpus, or in the alternate, motion for reasonable bond on the same." (Doc. 13). Therein, petitioner claimed that his medical condition could not be properly treated in the Ohio Department of Rehabilitation and Corrections (ORDC) and argued that without the requested relief he may not live long enough to see his habeas action to its completion or be able to argue his position. *Id.*

In opposition to the motion, respondent included a signed declaration from Dr. Martin Akusoba, M.D., petitioner's attending physician at the Corrections Medical Center. (Doc. 14, Ex. 1). Dr. Akusoba indicated that petitioner suffers from short bowel syndrome, which was treated though intravenous feeding and resulted in recurrent line infections and hospitalization on several occasions. *Id.* at 1-2. Dr. Akusoba reported that following an October 2010 line infection, petitioner was no longer administered IV nutrition and that, as of March 10, 2011, petitioner had responded well to receiving oral nutrition and was reclassified to Madison Correctional Institution in stable medical condition. *Id.* at 2-3.

The Court denied petitioner's motion on April 11, 2011. (Doc. 17). Petitioner has since filed a motion for leave to file a delayed appeal of the Court's denial of bail (Doc. 18), a motion to amend his habeas petition (Doc. 19), a motion for discovery (Doc. 20), and a second motion for emergency stay of execution.[3] (Doc. 22).

---

[3] On October 14, 2011, petitioner's motion for leave to file a delayed appeal was denied. (Doc. 26). In a separate Order issued this date, the Court granted petitioner's motion to amend and denied his motion for discovery. Petitioner's second motion for an emergency stay of execution is addressed in Section IV below.

In his amended petition, petitioner states that the main ground for relief in his habeas petition is "Cruel and Unusual Punishment in violation of the Eighth Amendment to the U.S. Constitution, based on petitioner's dire medical condition, and the Ohio Department of Rehabilitation and Corrections being unable to provide the adequate care required." (Doc. 19, p. 1). Petitioner states that "in the months since the Petition for Relief was filed, the situation has deteriorated, and more evidence of Deliberate Indifference by ODRC/CMC staff has become clear." *Id.* He reports being rushed to the Ohio State University Medical Center on at least eleven occasions; that due to frequent line removals, petitioner has lost central venous access in his upper body; that since being placed on an oral nutrition regiment he has lost approximately 40 lbs. and currently weighs 119 lbs. at six feet tall[4]; that he has experienced difficulty obtaining his oral nutrition regiment; and that he was administered expired nutritional fluid on several occasions, received nutritional fluid intended for another individual, and was nearly given morphine on one occasion. *Id.* at 4-13.

As an attachment to his amended petition, petitioner has included copies of prison grievances filed in response to the above matters, *id.*, Attachment #6, and cited numerous cases relating to the deliberate indifference of prison officials to the medical needs of inmates. He asserts that the ODRC is unable to provide him with adequate medical care and, as such, that his sentence violates the Eighth Amendment. *See id.* at 18-19; Doc. 1, Attachment #2, p. 3; *see also* Doc. 23, p. 4 ("The deterioration of [petitioner's] health is not part of this claim. It is only cited as proof that the prison is not able to care for his condition").

---

[4] Petitioner also asserts that doctors at CMC ignored the recommendation of gastroenterologist, Dr. Edward Levine, who saw petitioner over a telemedicine system on November 23, 2010, and recommended that petitioner be put back

### III.    THE PETITION SHOULD BE DENIED.

As a preliminary matter, the Court notes that to the extent that petitioner challenges the conditions of his confinement, as opposed to the constitutionality of his conviction and sentence, these claims are not cognizable in federal habeas corpus.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  *See also Kirby v. Dutton*, 794 F.2d 245, 248 (6th Cir. 1986) ("petition must directly dispute the fact or duration of the confinement"); *Kendrick v. Brunsman*, No. 2:07-cv-1037, 2007 WL 4246206, at *2 (S.D. Ohio Nov. 28, 2007) ("petitioner's claims relating to the conditions of his confinement or treatment by prison officials are not . . . properly considered in these habeas corpus proceedings").  "It is clear under current law that a prisoner complaining about the conditions of his confinement should bring suit under 42 U.S.C. § 1983."  *Young v. Martin*, 83 F. App'x 107, 108-09 (6th Cir. 2003) (citing *Preiser*, 411 U.S. at 498-99); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 991-92 (S.D. Ohio 2009).

While the Court recognizes the severity of petitioner's reported medical condition, in this habeas corpus action the Court is without jurisdiction to grant relief based on the alleged inadequacy of medical care or deliberate indifference of prison officials.  As noted above, because these claims relate to the conditions of his confinement, they should be brought under 42 U.S.C. § 1983.  *Preiser*, 411 U.S. at 498-99.

Petitioner argues that his claims are properly brought as a habeas corpus petition because he is challenging both "the fact of custody, based on the known deficiencies in ability to meet Petitioner's needs, AND the length of custody, as it is contrary to sentencing law."  (Doc. 23, p. 5) (citing *Preiser*, 411 U.S. at 499; *Morano v. Shartle*, No. 4:10-cv-824, 2010 WL 3221942, at *1 (N.D. Ohio Aug. 12, 2010)).  Petitioner also cites to *Coffin v. Richard*, 143 F.2d 443 (6th Cir.

---

on intravenous feeding.  (Doc. 19, p. 6).                8

1944), apparently for the proposition that petitioner is entitled to habeas corpus relief where "though lawfully in custody, he is deprived of some right to which he is lawfully entitled even in his confinement, the depravation of which serves to make his imprisonment more burdensome that the law allows or curtails his liberty to a greater extent that the law permits." *Coffin*, 143 F.2d at 445 (citing *Logan v. United States*, 144 U.S. 263 (1892)); (*see* Doc. 23, p. 3).

The petitioner in *Morano* also relied on the *Coffin* line of cases, arguing that "any unlawful restraint of his personal liberty may be inquired into on habeas corpus" and that "he cannot be deprived of rights that make his imprisonment more burdensome than necessary." *Morano*, 2010 WL 3321942, at *2. In denying petitioner relief, the district court found that "the decision in *Coffin* appears to be inconsistent with *Preiser*. Since the Court decided *Preiser* rarely has *Coffin* or the later *Armstrong v. Cardwell,* 457 F.2d 34, 35 (6th Cir.1972) decision, which relied on *Coffin,* been cited as controlling law." *Id.* Other district courts have agreed with the *Morano* court:

> Since the decision in *Preiser,* the Supreme Court has not endorsed the use of habeas corpus to challenge a prisoner's custody because he "is put under additional and unconstitutional restraints during his lawful custody," 411 U.S. at 499, such as a denial of appropriate medical care.
>
> . . .
>
> Moreover, *Armstrong,* like *Coffin,* predated *Preiser* and has not been relied on in support of the grant of habeas relief by any court in this circuit since *Preiser. Cf. Okoro v. Scibana,* No. 99-1322, 1999 WL 1252871, at *2 (6th Cir. Dec. 15, 1999) ("The district court properly dismissed Okoro's conditions of confinement claim, because it is not the type of claim that should be brought in a habeas corpus petition, which is designed to test the legality or duration of confinement."); *King v. Schotten,* No. 94-3087, 1994 WL 276906, at *1 (6th Cir. June 21, 1994) (noting that habeas claims "challenging the conditions of [the prisoner's] confinement were also properly dismissed," citing *Preiser,* 411 U.S. at 490).

*Gregory v. Outlaw*, No. 04-2848, 2005 WL 2114051, at *2 n.4, 3 (W.D. Tenn. Aug. 29, 2005); *see also Kendrick*, 2007 WL 4246206, at *2.

Accordingly, the Court finds that petitioner's claims pertaining to the conditions of his confinement could be properly brought under § 1983 and not cognizable in this federal habeas corpus action. Therefore, the Court will consider petitioner's claims as they pertain to the constitutionality of his conviction and sentence below.[5]

### A.      Ground One is procedurally defaulted and without merit.

In Ground One, petitioner contends that his sentence amounts to cruel and usual punishment in violation of his constitutional rights under the Eighth Amendment. (Doc. 1, Attachment #2, p. 1). He claims that the sentencing judge ignored evidence pertaining to his medical condition in arriving at the maximum, consecutive terms of incarceration. *Id.*

At sentencing, petitioner offered a letter from Dr. Michael Nussbaum, M.D., who stated that petitioner had received intravenous nutrition for over twenty years, requiring that nutrition be provided "through a central venous catheter that is tunneled under his skin a[nd] placed through his jugular vein with the tip ending in the right atrium of the heart." *Id.* at 4. The letter further indicated that a particular risk of the intravenous nutrition method is infection of the central venous catheters, which could lead to a life threatening infection of the heart; that petitioner had suffered from recurrent infections during his many years of treating him; and that

_____

[5]   Petitioner has also cited *Young Bok Song v. Gipson*, 423 F. App'x 506 (6th Cir. 2011), for the proposition that he may be foreclosed from filing a habeas petition by ill-advisedly filing under § 1983. (Doc. 23, p. 5). In *Young Bok Song*, the Sixth Circuit addressed whether the district court erred in failing to re-characterize a pro se § 1983 action as a petition for a writ of habeas corpus. *Young*, 423 F. App'x at 506. In affirming the lower court ruling, the Sixth Circuit found that, although a district court has discretion to *sua sponte* re-characterize a pro se pleading, the district court is not required to do so. *Id.* at 509. The plaintiff in that case forfeited his ability to file a habeas petition as an adverse consequence of filing his § 1983 action, not by virtue of filing the action (as petitioner appears to argue), but because the applicable statute of limitations expired for filing a timely habeas petition during the pendency of his § 1983 action. *Id.* at 510.

it was critically important that petitioner's intravenous lines be maintained in as sterile of an environment as possible. *Id.* at 4-5. Petitioner also offered the testimony of a psychologist, who testified as to petitioner's likelihood of recidivism with appropriate treatment and supervision. *Id.* at 1; (Doc. 9, Tr. 42-48). Petitioner claims that the sentencing judge ignored these opinions in reaching his sentence, which petitioner claims amounts to a death sentence due to the likelihood of infection or starvation. (Doc. 1, Attachment #2, pp. 2-3).

In the return of writ, respondent argues that petitioner has procedurally defaulted his grounds for relief. (Doc. 9, p. 5). With respect to Ground One, respondent contends that the claim was procedurally defaulted when petitioner failed to present the claim to the Ohio Court of Appeals on direct review and was barred by the rule of *res judicata* when he raised it in his subsequent appeal to the Ohio Supreme Court. Id. at 7. Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1)(c). *See also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 99-100 (6th Cir. 1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,*

888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985). *See also Weaver,* 888 F.2d at 1099. The Sixth Circuit applies a four-part test to determine if a claim is

procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  A state ground is "adequate and independent" if it is "firmly established and regularly followed."  *Rideau v. Russell*, 342 F. App'x 998, 1002 (6th Cir. 2009) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default."  *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)).  Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect.  *Harris,* 489 U.S. at 261.  No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court.  *Id.* at 263 n.9.  *See also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred."  *Harris*, 489 U.S. at 263 n.9.  Where the last reasoned

opinion addressing a claim explicitly relies on a procedural default, it is presumed that the last

state court judgment summarily dismissing that claim likewise relied on the procedural bar. *Ylst,*

501 U.S. at 803 (1991); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *Rust*, 17 F.3d at

161; *Simpson*, 94 F.3d at 203.

If, because of a procedural default, a petitioner can no longer present his claims to a state

court, he has waived them unless he can demonstrate cause for the procedural default and actual

prejudice resulting from the alleged constitutional errors, or that failure to consider the claims

will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. *See also*

*Murray v. Carrier,* 477 U.S. 478, 495 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Sykes,*

433 U.S. at 87.

"'[C]ause' under the cause and prejudice test must be something external to the

petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external

to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*,

501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488). "Such factors may include interference by

officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing

that a factual or legal basis for a claim was not previously available." *Wilson v. Hurley,* 382 F.

App'x 471, 478 (6th Cir. 2010) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991)).

In the instant case, petitioner failed to raise the Eighth Amendment claim alleged in

Ground One on direct appeal to the Ohio Court of Appeals.[6]  Though petitioner raised the claim

in his subsequent delayed appeal to the Ohio Supreme Court (*see* Doc. 9, Ex. 15), the claim

---

[6] Petitioner did argue that the sentence was contrary to Ohio Rev. Code §§ 2929.11-12 and an abuse of discretion. (*See* Doc. 9, Ex. 9).  However petitioner never raised the claim as a federal question, as is discussed in addressing Ground Two of the petition.

remains defaulted because the Supreme Court of Ohio lacks jurisdiction to consider constitutional claims that a defendant has failed to assert to the Ohio Court of Appeals. *See* Ohio Const. art IV, § 2(B)(2); *see also Leroy*, 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982); *State v. Williams,* 364 N.E.2d 1364, 1367 (Ohio 1977) (and cases cited therein), *vacated on other grounds,* 438 U.S. 911 (1978); *State v. Phillips,* 272 N.E.2d 347, 352 (Ohio 1971); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965). The fact that petitioner raised the Eighth Amendment claim in connection with his application to reopen also did not preserve the merits of that claim for habeas review. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008). "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Id.* at 312 (quoting *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, because petitioner failed to provide Ohio's highest court with an opportunity to correct the alleged constitutional error, he has waived the claim for purposes of federal habeas corpus review in the absence of a showing by him of "cause" for his default and actual prejudice as a result of the alleged error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750. *See also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has argued that he received the ineffective assistance of counsel, including appellate counsel's failure to raise the cruel and unusual punishment claim on direct appeal. (Doc. 9, Ex. 18, pp. 1-2; Doc. 11, pp. 3-4). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488-89; *see also Edwards v. Carpenter*, 529

U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In this case, petitioner procedurally defaulted his ineffective assistance of appellate counsel claim by failing to appeal the denial of his application to reopen to the Ohio Supreme Court. *See e.g. Hubbard v. Warden*, No. 1:09-cv-550, 2010 WL 3931500, at *4 (S.D. Ohio Sept. 7, 2010), *adopted* 2010 WL 3958739 (Oct. 4, 2010); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 944 (S.D. Ohio 2009); *Crawford v. Mack*, No. C-1-03-690, 2006 WL 508732, at *4 (S.D. Ohio Mar. 2, 2006).

In his response to the return of writ, petitioner contends that he was unable to appeal the Ohio Court of Appeals' denial of his 26(B) application because he was not informed of the decision until October of 2010, well beyond the deadline for filing a notice of appeal. (Doc. 11, p. 5). Petitioner avers that he was informed of the decision only after requesting a status update on his application on September 29, 2010. *Id.* However, even assuming without deciding that petitioner can establish cause to overcome his procedural defaults, petitioner is not entitled to relief because his Eighth Amendment claim is without merit.

The Eighth Amendment proscribes the infliction of "cruel and unusual punishments." U.S. Constit. amend. VIII. This provision "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284 (1983). In *Solem,* the Court stated:

> Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is *per se* constitutional. As the Court noted in *Robinson v. California,* 370 U.S. [660,] 667 [(1962)], a single day in prison may be unconstitutional in some circumstances.

*Id.* at 290 (footnote omitted).

Strict proportionality between a crime and its punishment is not required by the Eighth Amendment. *United States v. Marks,* 209 F.3d 577, 583 (6th Cir. 2000) (citing *Harmelin v. Michigan,* 501 U.S. 957, 959-60 (1991)). Rather, "only an extreme disparity between crime and sentence offends the Eighth Amendment." *Id.* (citing *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir. 1991)); *see also United States v. Wiley,* 132 F. App'x. 635, 643 (6th Cir. 2005); *cf. United States v. Raad,* 406 F.3d 1322, 1324 (11th Cir. 2005) (when addressing an Eighth Amendment claim, the reviewing court must "make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed"). A sentence that falls within the maximum penalty set by statute "generally does not constitute 'cruel and unusual punishment'" within the meaning of the Eighth Amendment. *Bryant v. Yukins,* 39 F. App'x 121, 123 (6th Cir. 2002) (quoting *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000), in turn quoting *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)).

In the instant case, petitioner's sentence does not amount to cruel and unusual punishment under the Eighth Amendment. First, petitioner's sentence is within the maximum prescribed by statue and the trial court had discretion to impose consecutive sentences in petitioner's case. (*See* Doc. 9, Ex. 11, p. 2 (citing Ohio Rev. Code §§ 2929.14(A)(3) & (5)); *State v. Elmore*, 912 N.E.2d 582, 591 (2009).[7] Petitioner was apprised that the sentencing judge could sentence him to a maximum sentence of up to 44 years prior to entering his plea and petitioner indicated that he understood the potential sentence and the impact of entering a guilty plea. (Doc. 9, Transcript, pp. 9-10).

---

[7] At the time of petitioner's conviction and sentence and through the direct appeal process, the statutory maximum for his convictions for importuning and gross sexual imposition, felonies of the third degree under Ohio Rev. Code § 2907.07(C)(1) and § 2907.05(A)(4) respectfully, was 5 years. *See* Ohio Rev. Code § 2929.14 (2004). Importuning under Ohio Rev. Code § 2907.07(D)(1), a felony of the fifth degree, carried a statutory maximum of one year. *Id.* Though the Ohio Rev. Code has recently been amended, *see* Ohio Rev. Code § 2929.14(A)(3) (2011), such amendments are not applicable to petitioner's case.

Furthermore, a comparison of the gravity of the offense and the severity of the sentence does not lead to an inference of gross disproportionality. *See United States v. Moore*, 643 F.3d 451, 455 (6th Cir. 2011). Petitioner claims that his sentence is so disproportionate as to the crime as to shock the moral sense of the community, arguing that a forty-four year sentence is excessive considering that the "only action that can possibly be considered sexual contact was the measuring of the waists and hips of three sisters, with their Mother's consent." (Doc. 1, Attachment #4, p. 1). He argues that cases heard in the same court involving serious crimes of rape, murder, manslaughter, felonious assault, and sex crimes against children have resulted in sentences far shorter than his sentence. *Id.* at 2. However, as the sentencing judge stated, the charges against petitioner were "awfully serious," *id.* at 13, and, after recounting petitioner's criminal history, the judge concluded that the sentence was intended to protect society from petitioner. *Id.* at 87. The trial judge noted that petitioner had stated his interest in "young teenagers who have just gone through puberty" and that petitioner had been arrested on two prior occasions, once in 1998 for taking nude photos of a 13-year-old girl and again in 2005 for attempting to solicit a young woman to pose nude for him. *Id.* at 86-87. The court also expressed concern over petitioner's behavior leading to the instant conviction:

> You came in contact with the Court again in this incident, and there's really three separate incidents. You had contact with St. Bernard, and you were caught, you're under investigation, you know you were under investigation, you took your computer, you built new ones, Springdale gets you for doing the same kind of thing, and then you do it again with Harrison.

*Id.* at 87. The trial court stated that petitioner "has shown that [he] just can't live in society" and said that the sentence was not meant to be cruel given his medical condition, but was intended to protect society and ensure that petitioner did not harm any more children. *Id.* at 87-88.

After review of the record in this case, the Court finds that petitioner's sentence is not the "extreme sentence" contemplated by the Eighth Amendment's prohibition on cruel and unusual punishment. *See United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011) (noting that "the Supreme Court has struck down only a handful of non-capital sentences under the Eighth Amendment, and those cases have been egregious in the extreme"); *see, e.g.*, *Harmelin*, 501 U.S. 996 (upholding the constitutionality of a mandatory life sentence without the possibility of parole where defendant had no criminal history and was convicted of simple possession of 672 grams of cocaine); *cf. Parker v. United States*, No. 3:09-cv-266, 2011 WL 2144591, at *5 (May 9, 2011) (" Using the outcome in *Harmelin* as a guideline, 'it follows *a fortiori'* that lesser sentences for convictions of more serious offenses do not violate the Eighth Amendment's 'cruel and unusual punishment' provision.") (citing *United States v. Sherrod*, No. 93-1186, 1995 WL 253178, at *4 (6th Cir. 1995)), *adopted* 2011 WL 2142843 (S.D. Ohio May 21, 2011).

Finally, to the extent that petitioner bases his Eighth Amendment challenge on the trial court's failure to consider testimony at sentencing, the Sixth Circuit has held that "the Eighth Amendment does not require considerations of mitigating factors at sentencing in non-capital cases." *Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2007) (citing *Harmelin*, 501 U.S. at 995). In any event, it is not clear that the Ohio trial court did not consider the testimony offered at sentencing. First, the trial judge expressly acknowledged petitioner's medical condition prior to announcing petitioner's sentence, noting that the sentence was not intended to be cruel in light of his medical problems. (Doc. 9, Transcript, p. 87). Furthermore, as the Ohio Court of Appeals noted, though Dr. Bassman testified that he believed petitioner could be treated for his sex addiction, he also testified that "(1) Hawkins had previously stopped attending therapy sessions; (2) he only resumed treatment because he had been arrested; (3) Hawkins

would not voluntarily seek out treatment; and (4) successful treatment would only 'lessen the likelihood' of Hawkins reoffending." (Doc. 9, Ex. 11, pp. 2-3).

Accordingly, petitioner is not entitled to relief based on the cruel and unusual punishment claim raised in Ground One of the petition. Petitioner has not established cause to excuse the procedural default of his Eighth Amendment claim and, in any event, has not shown that his sentence, which fell within the statutory range of penalties set by statute, violated the Cruel and Unusual Punishment Clause.[8]

**B.  Petitioner is not entitled to relief based on the claims alleged in Ground Two because the claims are not cognizable in federal habeas corpus or are without merit.**

In Ground Two, petitioner contends that his sentence is contrary to Ohio sentencing law and, therefore, violates the 5th and 14th Amendments. (Doc. 1, Attachment #1, p. 1). More specifically, petitioner claims that the sentence is in violation of Ohio Rev. Code § 2929.11, which specifies the overriding purposes of and factors to be considered in felony sentencing. Petitioner argues that his sentence was imposed without consideration of the testimony concerning his likelihood of recidivism and was not "consistent with sentences imposed for similar crimes by similar offenders." (Doc. 19, p. 15). Petitioner also argues that the sentence deprived him of his constitutional rights to due process of law and equal protection. *Id.* at 13.

---

[8]  The Court also finds that petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally defaulted claims are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. In this case, although petitioner has offered new information regarding his medical condition and treatment, he has not offered any new evidence pertaining to his constitutional claims or otherwise demonstrated that he was actually innocent. *See Schlup,* 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

The Court is precluded from reviewing petitioner's grounds for relief to the extent that they are based on alleged violations of state law. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Therefore, this federal court can only consider whether the alleged sentencing error violated petitioner's federal constitutional right to due process. However, as respondent contends in the return of writ, it appears petitioner has waived any such constitutional claim because he failed to present it as a federal issue to the Ohio courts.

It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987)). This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). *See also Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently

particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.* (citing *Franklin*, 811 F.2d at 326).

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin*, 811 F.2d at 326. "While a petitioner need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal citation and quotation marks omitted). Generally, a claim is not fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

In the instant case, petitioner failed to present any constitutional claim to the Ohio courts stemming from Ground Two of his habeas petition. On direct appeal and in his delayed appeal to the Ohio Supreme Court, petitioner argued that his sentence was an abuse of discretion and was imposed in violation of Ohio Rev. Code § 2929.11. (Doc. 9, Ex. 9 & 15). Petitioner did not rely on federal or state case law employing constitutional analysis, phrase his claims in terms of constitutional law, or allege facts within the mainstream of constitutional law. *See id.*; *McMeans,* 228 F.3d at 681. Therefore, petitioner has procedurally defaulted and waived these claims absent a showing of cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.

As cause for his failure to raise his constitutional claims in the Ohio courts, petitioner contends that his appellate counsel was ineffective for failing to raise his claims as constitutional issues. (Doc. 11, p. 6) As noted previously, ineffective assistance of counsel can provide cause to overcome a procedural default, so long as the ineffective assistance of counsel claim is not itself procedurally defaulted. *See Murray,* 477 U.S. at 488-89. In this case, petitioner procedurally defaulted any ineffective assistance of counsel claim based on his attorney's failure to raise the underlying constitutional claims asserted in Ground Two by failing to raise these claims in his application to reopen his appeal or on further appeal to the Ohio Supreme Court.[9] (*See* Doc. 9, Ex. 18). Therefore, petitioner may not rely on the ineffective assistance of appellate counsel as cause to excuse the procedural default of the equal protection and due process claims raised in Ground Two. Because petitioner has also failed to demonstrate that failure to consider the claims will result in a miscarriage of justice, *see supra* n.8, the Court finds that petitioner has procedurally defaulted and waived these claims for relief.

Accordingly, to the extent that petitioner challenges the Ohio court's sentence pursuant to Ohio Rev. Code § 2929.11 in the instant petition, petitioner has failed to state a cognizable claim for relief. To the extent that petitioner alleges constitutional error in Ground Two of his habeas petition, petitioner has procedurally defaulted these claims because he failed to present the federal issues to the Ohio courts.

### C. Ground Three is procedurally defaulted or without merit.

In Ground Three, petitioner alleges the ineffective assistance of trial and appellate counsel. (Doc. 19, p. 17).

---

[9] In his application to reopen, petitioner argued that appellate counsel was ineffective for failing to argue that his sentence amounted to cruel and unusual punishment based on his medical condition and that the judge may have been biased. (*See* Doc. 9, Ex. 18). At no point during the state court proceedings, did petitioner raise claims based on the Equal Protection or Due Process Clauses, as are raised in Ground Two of the instant petition.

*i.      Trial Counsel*

With regard to trial counsel, petitioner states that counsel obtained a plea bargain based on petitioner's cooperation with detectives and that counsel "planned to 'beg for mercy' based on petitioner's dire medical condition." *Id.* He argues that after following counsel's advice, he discovered that he entered a guilty plea to charges not supported by the facts and to felonies which he believes were in fact misdemeanors. *Id.* Petitioner contends that "[t]he plea bargain did not benefit petitioner at all" and that he may have benefitted from a jury trial. *Id.*

By pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings. *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir.1991). A "guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *see also McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985). Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, his guilty plea was not intelligently and voluntarily entered. *Id.; see also Campbell,* 769 F.2d at 315.

In the instant case, petitioner's ineffective assistance of trial counsel claims relate to purported deprivations of constitutional rights occurring before petitioner entered his guilty plea. The Court finds that petitioner has waived these grounds for relief by entering a guilty plea. *See Tollett,* 411 U.S. at 267. With regard to petitioner's assertion that his convictions were not supported by the facts, in *United States v. Broce*, 488 U.S. 563 (1989), the Supreme Court held that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal

elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *Broce*, 488 U.S. at 569. Thus, by entering a guilty plea petitioner forfeited his right to challenge his conviction based on the sufficiency of evidence. *See, e.g., United States v. Martin,* 526 F.3d 926, 933 (6th Cir. 2008) (finding that the defendant "waived his right to appeal the sufficiency of evidence supporting his conviction by entering a guilty plea that did not reserve the issue for appeal"). Furthermore, to the extent that petitioner challenges his convictions based on alleged constitutional violations that occurred prior to the entry of his guilty plea and do not pertain to voluntariness, the Court finds that petitioner has waived these claims as well. *See Tollett*, 411 U.S. at 267; *see also United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001) ("pre-plea ineffective assistance of counsel claims are waived") (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)), *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975) ("A plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true.") (citing *Holland v. United States*, 406 F.2d 213, 216 (5th Cir. 1969)).

Therefore, as long as petitioner entered his guilty plea knowingly, voluntarily and intelligently, with sufficient awareness of the relevant circumstances and likely consequences, petitioner is not entitled to habeas relief based on the ineffective assistance of counsel claim alleged in Ground Three of the petition.

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *See, Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

*Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)). In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds,* 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Brady,* 397 U.S. at 749; *King,* 17 F.3d at 153 (and cases cited therein).

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King,* 17 F.3d at 154; *Hart v. Marion Corr. Instit.,* 927 F.2d 256, 259 (6th Cir. 1991). Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King,* 17 F.3d at 153; *see also El-Nobani v. United States,* 287 F.3d 417, 421 (6th Cir. 2002). "When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). As the Supreme Court noted in *Blackledge v. Allison,* 431 U.S. 63 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn

26

> declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (internal citations omitted).

A review of the record shows that petitioner's guilty plea was voluntary, intelligent, and was entered after being fully informed of his constitutional rights. Prior to entering his guilty plea, petitioner indicated that he understood the plea agreement, the charges against him, and that he could be sentenced to the maximum sentence of 44 years. (Doc. 9, Transcript pp. 9-10). Petitioner stated that he understood that by pleading guilty to the charges he was making a complete admission of guilt and that he forfeited several constitutional rights by virtue of entering the plea. *Id.* at 29-30. He further affirmed that he was not under the influence of drugs or alcohol and that the medicines he had taken did not affect his competence. *Id.* at 30. Trial counsel affirmed that petitioner understood the plea[10] and the trial court accepted the plea based

---

[10] In response to the trial court's suggestion that "[t]he likelihood of probation is pretty, pretty slim" and that petitioner could receive 44 years, trial counsel and petitioner stated the following:

> [TRIAL COUNSEL]: Judge, with respect to that, just so Mr. Hawkins is crystal clear about what we're doing, and I have explained to him what you just said. We're obviously swinging for the fences, and we're going to try to convince the Court that probation is appropriate. We have got an expert witness and things like that.
>
> THE COURT: We will do that at sentence, sentencing hearing.
>
> [TRIAL COUNSEL]: Slim as the chances of that may be, whatever the case is - -
>
> THE COURT: These allegations are awfully serious. It's not his first time.
>
> [TRIAL COUNSEL]: And Mr. Hawkins knows that, and Mr. Hawkins knows that we at least have a shot at that.
>
> THE COURT: I just like to be open with them, it's not very likely, but I keep an open mind. Okay. So do you understand that, Mr. Hawkins? Do you understand everything - - anything you don't understand about the plea agreement?
>
> DEFENDANT: No, sir.

(Doc. 9, Transcript pp. 13-14).

on petitioner's responses. *Id.* at 30-31.

The Court finds that petitioner's guilty plea was entered voluntarily. The record does not permit the Court to conclude that petitioner's plea was anything other than a "voluntary and intelligent choice among the alternative courses of action open to him." *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). Accordingly, by entering a voluntary plea, petitioner waived his claim of ineffective assistance of trial counsel as asserted in Ground Three.

ii.    *Appellate Counsel*

Petitioner also raises claims of ineffective assistance of appellate counsel. (Doc 19, pp. 17-18). Petitioner claims that he and his family were unable to contact appellate counsel on several occasions and, as a result, several issues were not brought up on appeal. *Id.* Petitioner argues that appellate counsel provided ineffective assistance by failing to raise petitioner's medical condition and the constitutional nature of his sentencing error claim, as raised in Ground Two, on appeal. *Id.* Finally, petitioner claims that his appellate counsel incorrectly stated that he had been convicted of several counts of kidnapping in his appellate brief. *Id.* at 18.

In order to succeed on a claim of ineffective assistance of appellate counsel, petitioner must demonstrate that appellate counsel made such serious errors that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *Id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id.* at 695; *see also Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003); *McMeans*, 228 F.3d at 682. The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Strickland*, 466 U.S. at 697.

In petitioner's first ineffective assistance of appellate counsel claim, petitioner contends that counsel was ineffective for failing to raise his medical condition on appeal. (Doc. 19, pp. 17-18). Petitioner also raised the underlying Eighth Amendment claim in Ground One, arguing that his sentence amounted to cruel and unusual punishment because of his medical condition. *Id.* at 3-13. As noted in the Court's discussion of Ground One, by failing to appeal the denial of his application to reopen to the Ohio Supreme Court, petitioner procedurally defaulted the claims

raised in his 26(B) application, including his ineffective assistance of appellate counsel claim based on counsel's failure to raise his medical condition on appeal. *See supra* pp. 15-16. Again, even assuming without deciding that petitioner's failure to receive notice of the decision constituted cause to overcome his procedural default, the Court has previously determined that the underlying Eighth Amendment claims is without merit and, therefore, petitioner cannot demonstrate that counsel was ineffective for failing to raise the meritless claims. *See Davie,* 547 F.3d at 312 ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal"); *Willis* 351 F.3d at 745 ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit") (citation omitted).

Petitioner's claim that appellate counsel was ineffective for failing to raise the constitutional nature of his claims on appeal is also procedurally defaulted. Petitioner failed to raise this claim in his 26(B) application or in any other state court proceeding. He has not offered cause to excuse his procedural default other than his pro se status or access to the library, both of which are insufficient to excuse the default in this case. (*See* Doc. 11, p. 9); *see also Bonilla*, 370 F.3d at 498 (holding that the petitioner's pro se status, limited access to the prison law library, and ignorance of the law and procedural requirements were insufficient to establish cause sufficient to excuse his procedural default); *Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995) ("[Petitioner]'s pro se status and ignorance of his rights do not constitute cause excusing his failure to raise grounds before the state courts.").

Finally, the Court finds that appellate counsel's erroneous statement that petitioner had been convicted of kidnapping in his appellate brief would not have altered the outcome of his appeal. (*See* Doc. 9, Ex. 15, p. 13; Doc. 19, p. 18). Petitioner contends that the error "may have

negatively influenced the court." *Id.* However, as noted previously, petitioner must demonstrate that the alleged errors had more than "some conceivable" effect on the outcome of the proceeding. *Strickland,* 466 U.S. at 693. Furthermore, the Ohio appellate court was clearly not mislead by counsel's error, as the appellate decision specifically enumerated each of petitioner's convictions in determining the constitutionality of his sentence and did not indicate that he was convicted of kidnapping in overruling petitioner's assignment of error. (*See* Doc. 9, Ex. 11).

Based on the above analysis, the Court finds that petitioner is not entitled to habeas relief based on the ineffective assistance of counsel claims raised in Ground Three of the petition.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief and his habeas petition should be denied. To the extent that petitioner challenges the medical care or conditions of his confinement, these claims are not cognizable in this federal habeas corpus action. Petitioner's cruel and unusual punishment claim, as argued in Ground One, was procedurally defaulted by petitioner's failure to raise the claim to the Ohio Supreme Court in an appeal of the decision denying his application to reopen and, in any event, is without merit. Ground Two of the petition is not cognizable to the extent that petitioner challenges his sentence under Ohio law and was otherwise procedurally defaulted and waived because petitioner failed to present the federal issue to the Ohio courts. Finally, the ineffective assistance of counsel claims raised in Ground Three are procedurally defaulted or without merit. Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

## IV.     PETITIONER'S MOTION FOR AN EMERGENCY STAY OF EXECUTION OF SENTENCE SHOULD BE DENIED

Petitioner has also filed a second motion for a stay of execution of sentence pending the outcome of his habeas corpus action. (Doc. 22).

A federal court has authority to grant bail to a petitioner in a habeas corpus action pending a decision on the merits of the petition. *Dotson v. Clark,* 900 F.2d 77, 78-79 (6th Cir. 1990). However, in order to be admitted to bail in such a case, petitioner must show a substantial claim of law based on the facts surrounding the petition, and either a strong probability of success on the merits or the existence of some exceptional circumstances deserving of special treatment in the interest of justice. *Aronson v. May,* 85 S.Ct. 3, 5 (1964) (Douglas, J., in chambers); *Dotson,* 900 F.2d at 79. Release of a state prisoner pending consideration of the habeas corpus petition is reserved for the extraordinary case. *See Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). "Since a habeas petitioner is appealing a presumptively valid state conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." *Id.* Before and during trial, the accused enjoys a presumption of innocence, and bail is normally granted. *Glynn v. Donnelly,* 470 F.2d 95, 98 (1st Cir. 1972). However, the presumption fades upon conviction, with the State acquiring a substantial interest in executing its judgment. *Id.* This combination of factors dictates a "formidable barrier" for prisoners seeking interim release while they pursue their collateral remedies. *Id.* Therefore, in the absence of exceptional circumstances, courts will not grant bail prior to final decision on the merits unless the petitioner demonstrates not merely a clear case on the law, but also a clear and readily evident case on the facts. Even where the Court concludes that a petition raises a substantial question of law, "[m]erely to find that there is a substantial question is far from enough." *Lee,* 989 F.2d at 871 (quoting *Glynn,* 470 F.2d at 98).

For the reasons stated in support of denying petitioner's habeas petition, it is

**RECOMMENDED** that petitioner's second motion for a stay of execution of sentence (Doc. 22)

be **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.  Petitioner's second motion for a stay of execution of sentence (Doc. 22) should also be **DENIED**.

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.  In addition, a certificate of appealability should not issue with respect to the claims addressed on the merits herein in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

       *s/ Stephanie K. Bowman*
       Stephanie K. Bowman
       United States Magistrate Judge

rh

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BEN HAWKINS,                                      Case No. 1:10-cv-551
      Petitioner,

                               Barrett, J.
      vs.                                     Bowman, M.J.

WARDEN, CORRECTIONS
MEDICAL CENTER,
      Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).